```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
AG FUR ATHERISCHE OLE,              :
                                    :
            Plaintiff,              :
                                    :
      -against-                     :
                                    :
GUCCI AMERICA, INC. (F/K/A GUCCI    :
SHOPS INC.),                        :
                                    :
            Defendant.              :
                                    :  04 Civ. 280 (GBD) (THK)
------------------------------------X
GUCCI AMERICA, INC.,                :  **MEMORANDUM OPINION**
                                    :  **AND ORDER**
            Counterclaim-Plaintiff, :
                                    :
      -against-                     :
                                    :
AG FUR ATHERISCHE OLE and           :
WELLA AG,                           :
                                    :
            Counterclaim Defendant  :
            and Additional Defendant.:
------------------------------------X
```
**THEODORE H. KATZ, United States Magistrate Judge.**

This action was referred to this Court for general pretrial supervision. Presently before the Court is Defendant and Counterclaim-Plaintiff Gucci America, Inc.'s ("Gucci") motion for a protective order seeking to preclude Plaintiff and Counterclaim Defendant AG Fur Atherische Ole ("AO") and additional Defendant Wella AG ("Wella") from disclosing any confidential materials to AO and Wella's proposed independent expert, David Horner ("Horner").

This action arises out of a trademark licensing agreement under which AO and Wella had the exclusive right to use the Gucci trademark to manufacture and distribute fragrance and cosmetics

products. There are a variety of claims and counterclaims involved in the action. Most relevant to the current motion is Gucci's claim that AO and Wella breached the terms of the licensing agreement by engaging in inappropriate sales of Gucci-brand fragrances in the "gray market" and secondary market. (See Declaration of Lawrence B. Friedman, Esq., dated Feb. 9, 2006 ("Friedman Decl."), ¶ 4.) Gucci contends that these practices have undermined long-term sales of Gucci fragrances by damaging the Gucci brand's prestige. (See id. ¶ 5.)

In the context of the current motion, Gucci opposes AO and Wella's designation of Horner as an "Independent Expert," as defined in the parties' Stipulation and Protective Order, which was agreed to by the parties and ordered by the Court (Daniels, J.) on September 20, 2004 (the "Protective Order"). As an "Independent Expert," Horner would be given access to confidential proprietary information provided by Gucci and non-parties. Gucci's opposition is based on Horner's alleged previous relationships with AO and Wella's affiliate, Cosmopolitan Cosmetics, Inc., and the Northern Group, the exclusive distributor to the secondary market for Cosmopolitan Cosmetics. (See Memorandum of Law in Support of Defendant and Counterclaim-Plaintiff Gucci America, Inc.'s Motion for a Protective Order by Order to Show Cause, dated Feb. 10, 2006 ("Gucci Mem."), at 2-3.) Gucci alleges that Horner served as a business consultant for Cosmopolitan Cosmetics, and as a consultant

2

for and employee of the Northern Group. (See id.) Gucci emphasizes the fact that these positions were omitted from Horner's curriculum vitae that was provided to Gucci. (See id. at 5.) Essentially, Gucci argues that Horner's "extensive and sustained relationship with persons and entities – including Cosmopolitan Cosmetics, Inc. and Northern Group – that are at the heart of one of Gucci America's contentions in this lawsuit" make him incompetent to serve as an independent expert. (See id. at 9.) Gucci also sees Horner as having "an obvious interest in utilizing the information he would obtain during the course of this litigation to assist him in his ongoing business ventures as a fragrance industry consultant and senior executive managing brands that are competitors of [Gucci and other non-party] brands, about which AO and Wella propose to provide him with commercially sensitive documents and deposition testimony." (Id. at 3.)

At a minimum, Gucci asks the Court to preclude Horner from receiving access to highly sensitive and proprietary information produced by Gucci and other non-parties, Elizabeth Arden, Inc. ("Arden") and YSL Beauté, which provided confidential business information pursuant to document subpoenas and deposition testimony. (See id.)[1]

---

[1] Arden supports Gucci's motion, and claims that Horner is "precisely the type of individual we would want to keep from studying our confidential documents." (See Arden Letter, dated Mar. 2, 2006, at 2.)

3

For the reasons set forth below, the Court denies Gucci's motion and holds that Horner is not prohibited from reviewing "Protected Materials" as an Independent Expert under the terms of the parties' Protective Order.

**DISCUSSION**

The parties' Protective Order provides that "Protected Material" may be designated either "Confidential Information" or "Attorney's Eyes Only Information." (See Gucci Mem. at 4.) A party may only grant access to Protected Materials to certain individuals, including "Independent Experts who are engaged by a Receiving Party or its counsel." (Protective Order, attached as Ex. A to Friedman Decl., ¶ 4(b)-(c); see also Gucci Mem. at 4-5.) As defined by the Protective Order:

> "Independent Expert" means an expert or independent consultant or other person, who is neither employed by a Party nor renders services to a Party in the ordinary course of the Party's business, who is actually retained or employed to advise or to assist counsel in this litigation, including the preparation and trial of this action . . .

(Protective Order ¶ 2(j).) A "Party" is simply defined as "any of the parties to this action." (Id. ¶ 2(a).)

Courts have utilized the following factors in analyzing whether to approve an expert as independent under the terms of a protective order: (1) the individual's relationship to or status within the receiving party's business, (2) the individual's present involvement in the receiving party's competitive decisions, (3) the

4

likelihood of the relationship continuing, and (4) the feasibility of separating either the knowledge gained or the individual from future endeavors. See BASF Corp. v. United States, 321 F. Supp. 2d 1373, 1380 (Ct. Int'l Trade 2004); Ares-Serono, Inc. v. Organon Int'l B.V., 153 F.R.D. 4, 6 (D. Mass. 1993).

Here, Gucci does not allege that Horner is or was an employee or consultant to Wella or AO. Rather, Gucci bases its opposition on Horner's alleged previous relationships with Cosmopolitan Cosmetics, a Wella subsidiary in charge of fragrances and cosmetics, and non-party Northern Group, a distributor. Gucci argues that Northern Group has been involved in conduct on behalf of Wella and AO - the distribution of Gucci fragrances to the secondary market - which is at issue in this litigation. (See Gucci Mem. at 9.)

Yet, Horner has never served as an employee of Cosmopolitan Cosmetics, AO, Wella or any of its affiliates, and does not serve as a consultant to any of these entities in the normal course of business. (See Declaration of David Horner, dated Feb. 21, 2006 ("Horner Decl."), ¶ 10.) Horner has also never been employed by Northern Group. Horner does admit to serving as a consultant for Northern Group, the company Gucci contends is Cosmopolitan Cosmetics' exclusive distributor. (See id. ¶ 5.)[2] However, Horner

---

[2] In his role as consultant for Northern Group, Horner's contact with Cosmopolitan Cosmetics was extremely limited. In 1999, Cosmopolitan Cosmetics engaged Northern Group's niche

5

has never been involved with the fragrance at issue in this litigation or with Northern Group's secondary market distribution business, which is implicated in the claims in this action. (See id. ¶¶ 5-9, 11-12.) Moreover, he last provided services to Northern Group in 2004. (See id. ¶ 6.)[3]

In drafting the Protective Order, the parties did not seek to exclude as Independent Experts individuals who have consulted for companies that do business with the parties to this action. Rather, the focus of the Protective Order is on limiting Defendants' and their employees' access to privileged information. The Protective Order only precludes individuals who are employed by or render services to a party in this action in the ordinary course of business from acting as an Independent Expert. Therefore, Gucci

---

marketing department in connection with the launch of a prestige fragrance brand for selective distribution. (See id. ¶ 11.) Horner acted as an industry consultant to Northern Group's niche marketing department during the engagement. (See id. ¶¶ 8, 11.) Horner's only other dealings with Cosmopolitan Cosmetics consisted of a brief meeting in Paris, on an unspecified date, with a representative of a fragrance owned by Cosmopolitan Cosmetics, and an assignment to market the "4711" fragrance brand to Saks Fifth Avenue. (See id. ¶ 12.)

[3] Horner describes his curriculum vitae, which was provided to Gucci, as an overview of his experience, including representative examples of clients for whom he has consulted. He maintains that it is not meant to be a comprehensive list of all his consulting engagements over the last nineteen years. Horner also emphasizes that he was not asked to provide such a comprehensive list. (See id. at ¶ 4.) Moreover, the omission of his work for Northern Group was not an intentional attempt to conceal that work, since his curriculum vitae had been prepared prior to his involvement in this litigation.

6

and Arden's concern that highly proprietary information relating to customers, pricing, revenue, product shipments, and policies and practices for the gray market, misses the point. The Protective Order does not preclude experts who had worked, or might in the future work or consult for competitors, from viewing the parties proprietary information in their role as expert.[4] Thus, Horner is not disqualified from serving as an Independent Expert under the express terms of the Protective Order, because he is not employed by and does not render services to Wella or AO.

Moreover, under the BASF/Ares-Serono factors, Horner's lack of a past or continuing relationship with Wella and AO supports a finding of Horner's independence. Horner has signed an acknowledgment agreeing to be bound by the Protective Order's terms pertaining to disclosure and the use of confidential information. (See Acknowledgment and Agreement to be Bound by the Stipulated Protective Order, dated Feb. 16, 2006, attached as Ex. A to Horner Decl.) Horner himself notes that he has thirty-five years of experience in the fragrance industry, during which time he has been trusted with highly proprietary and confidential information by clients and employers, and has never been accused of violating confidentiality obligations. (See Horner Decl. ¶ 18.) As such,

---

[4] Indeed, under the Protective Order, directors, officers, and two designated representatives of AO and Wella are permitted to view "Confidential Information." It is difficult to discern why disclosure to an outside consultant presents a greater threat.

7

Horner appears capable of separating the knowledge he may gain from reviewing any Protected Material in this case from his future endeavors. Therefore, Horner is also sufficiently independent to serve as Wella and AO's Independent Expert under the BASF/Ares-Serono factors.

Finally, the Court notes that it is common for experts in small, close-knit industries, such as the prestige fragrance industry, to have served as consultants in the industry. As Wella and AO argue, to preclude Horner from serving as an expert, when he was not even a consultant to AO or Wella directly, would make it extremely difficult to identify an expert who could testify in this action. (See Memorandum of Law in Opposition to Defendant and Counterclaim Plaintiff Gucci America, Inc.'s Motion for a Protective Order by Order to Show Cause, dated Feb. 21, 2006, at 3.)

## CONCLUSION

Wella and AO are permitted to disclose Protect Materials to Horner as provided for in the parties' Protective Order. Gucci's motion for a protective order is hereby denied.

SO ORDERED.

Dated: March 28, 2006
New York, New York

_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Copies mailed to:

Kerry L. Konrad, Esq.
Simpson Thatcher & Bartlett LLP
425 Lexington Avenue
New York, New York 10017

Lawrence B. Friedman, Esq.
Cleary Gottlieb Steen & Hamilton, LLP
1 Liberty Plaza
New York, New York 10006